# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL ACTION NO. 5:23-CV-00164-KDB-SCR

| | |
|---|---|
| JONATHAN SLOAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| GOOGLE LLC, et. al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND RECOMMENDATION

**THIS MATTER** is before the Court on Defendant Google LLC's ("Google") "Motion to Dismiss Plaintiff's Complaint," (Doc. No. 4) and Defendant Allied Universal Security Services' ("Allied Universal")[1] "Motion to Dismiss Plaintiff's Complaint" (Doc. No. 10), as well as the parties' briefs and exhibits. (Doc. Nos. 5, 6, 8, 10-1, 10-2, 12 & 13).

The Motions have been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and are now ripe for the Court's consideration.

For the reasons set forth below, the undersigned respectfully recommends that Defendant Google's Motion be granted in part and denied in part and Defendant Allied Universal's Motion be granted.

---

[1] Allied Universal's Motion to Dismiss was filed by Universal Protection Service, LLC noting that it is doing business as Allied Universal Security Services. (Doc. Nos. 10 & 10-1). On January 17, 2024, this case was consolidated with a related case because they both originate from the same Complaint, but was removed by each Defendant separately. (Doc. No. 9); see also Sloan v. Google LLC, No. 5:23-cv-186-KDB-SCR, (Doc. Nos. 13-14).

# I. FACTUAL AND PROCEDURAL BACKGROUND

On August 29, 2023, Plaintiff filed his Complaint in Caldwell County Superior Court, which was later removed to this Court. (Doc. No. 1). Plaintiff brings the following claims: (1) Religious Discrimination Creating a Hostile Work Environment under Title VII of the Civil Rights Act of 1964 ("Title VII") against Google; (2) Religious Discrimination Resulting in Disparate Treatment under the North Carolina Equal Employment Practices Act ("NCEEPA") against Google; (3) Religious Discrimination Resulting in Wrongful Termination under NCEEPA against Google; (4) Civil Conspiracy to Interfere with Civil Rights under NCEEPA against Google and Allied Universal; (5) Religious Discrimination Creating a Hostile Work Environment under Title VII against Allied Universal; and (6) Religious Discrimination Resulting in Constructive Discharge under Title VII against Allied Universal. (Doc. No. 1-1 ¶¶ 42-123). Plaintiff alleges that on May 31, 2023, the Equal Employment Opportunity Commission ("EEOC") issued to him a Notice of Right to Sue. Id. ¶¶ 18, 40-41.

Accepting as true the factual allegations included in Plaintiff's Complaint for the purposes of evaluating these Motions, Plaintiff was a direct employee of G4S Solutions from 2007, until G4S Solutions was acquired by and became Allied Universal sometime in 2021, and remained there until December 2, 2021. Id. ¶ 20-21. Google contracted with G4S Solutions/Allied Universal for Plaintiff to provide security services for Google at its datacenter in Lenoir, North Carolina, from 2007 until December 2, 2021. Id. ¶ 22. Plaintiff worked at the direction and under the supervision of Google.[2] Id. ¶ 24.

---

[2] Defendants did not challenge Plaintiff's allegation that Google was a temporary employer of the Plaintiff. (Doc. No. 1-1 ¶¶ 45, 59, 76, 88); see Brown v. Friday Servs., Inc., 460 S.E.2d 356, 360, disc. review denied, 463 S.E.2d 234 (N.C. Ct. App. 1995); see also Henderson v. Manpower of Guilford Cnty., Inc., 319 S.E.2d 690, 694 (N.C. Ct. App. 1984).

On July 27, 2021, Google notified Allied Universal that beginning on September 30, 2021, no employees or contractors were permitted to work at its site without having received the COVID-19 vaccination or an employer-approved accommodation. Id. ¶ 25. Allied Universal informed Plaintiff of the new requirement, and Plaintiff submitted a religious accommodation request. Id. ¶ 26. Allied Universal approved Plaintiff's accommodation request. Id. ¶ 27. Plaintiff alleges, upon information and belief, that Allied Universal also submitted Plaintiff's accommodation approval to Google. Id. ¶ 28.

On September 17, 2021, Google informed Allied Universal that its policy would be amended to allow for a testing option for unvaccinated individuals as an accommodation, which would require proof of a negative COVID-19 test every three days, effective November 1, 2021. Id. ¶ 29. Plaintiff complied with the policy, but claims doing so caused nausea and headaches from the continuous tests. Id. ¶ 30. Plaintiff also wore a mask and remained six feet from all persons. Id.

During this time, Google provided stars on badges only for employees who were vaccinated. Id. ¶ 31. Plaintiff did not receive a star as he was unvaccinated and he alleges this caused him to experience scrutiny from his supervisors and coworkers for not receiving the vaccination, causing him severe emotional distress. Id. Plaintiff alleges that he "experienced frequently invidious comments and ridicule," "deliberate isolation and exclusion," and "invasive questions and unwanted discussions regarding his religion" by his co-workers and supervisors for not receiving the COVID-19 vaccination "against his sincere religious belief as a Christian." Id. ¶¶ 48-50, 102-104, 119. Plaintiff alleges that "[b]ut for Defendant Google placing stars on the employee work badges of those who did receive the COVID-19 vaccination, Plaintiff would not have been identified and singled out by his coworkers and supervisors for his not receiving the

COVID-19 vaccination against his sincere religious belief as a Christian." Id. ¶ 51. Plaintiff also maintains that he did not receive "certain bonuses and other work benefits for not receiving the COVID-19 vaccination against his sincere religious belief as a Christian." Id. ¶ 52.

On November 1, 2021, Google informed Allied Universal that beginning December 3, 2021, Google would no longer accommodate non-vaccinated employees, and that no unvaccinated employees or contractors would be permitted to work at its site absent an employer-approved accommodation. Id. ¶ 32. Plaintiff alleges, upon information and belief, that in response Allied Universal resubmitted Plaintiff's religious accommodation request to Google. Id. ¶ 33. On November 20, 2021, Google informed Allied Universal that it would not approve any accommodation requests for security personnel at Google's datacenter. Id. ¶ 34. On December 2, 2021, Allied Universal informed Plaintiff that he was terminated from his position with Google, and that Allied Universal would put Plaintiff on unpaid leave as an accommodation. Id. ¶ 35. At this time, Plaintiff was terminated from his position with Google, but remained employed, on unpaid leave, with Allied Universal.

Plaintiff alleges that he was qualified for his position as a Security Guard at Google's datacenter, and was satisfactorily performing his job duties. Id. ¶ 62. He alleges that, upon information and belief, other contract employees who were not Christians were allowed to keep their positions at the Google datacenter despite not receiving the COVID-19 vaccination. Id. ¶ 65. Plaintiff also alleges, upon information and belief, that Defendants thereafter posted a security guard position advertisement that indicated accommodations would be allowed for medical or religious reasons. Id. ¶ 36.

On January 14, 2022, and while he remained on unpaid leave, Allied Universal contacted Plaintiff by email with incomparable positions that paid less and/or were too far in distance for

Plaintiff to commute, forcing Plaintiff to apply to outside jobs. Id. ¶ 116. On February 18, 2022, Allied Universal contacted Plaintiff by telephone informing him that they had no positions to offer him. Id. ¶ 117. Plaintiff alleges that "Defendant Allied Universal only presented to Plaintiff jobs that did not require a COVID-19 vaccination, despite Plaintiff having a religious accommodation that may have been approved by other agencies." Id. ¶ 118. As a result, Plaintiff was forced to accept a job with another employer. Id. ¶ 120.

On December 18, 2021, Plaintiff filed administrative charges with the EEOC claiming religious discrimination by Google and Allied Universal (the "EEOC Charges"). Id. ¶ 37; (Doc. Nos. 5-1 & 10-2). On May 31, 2023, the EEOC dismissed the claims, and sent Plaintiff a "Notice of Right to Sue." (Doc. No. 1-1 ¶ 40). The record does not indicate whether Plaintiff filed an additional EEOC charge concerning the later 2022 events.

Defendants now move to dismiss Plaintiff's Complaint for failure to exhaust his administrative remedies and failure to state a claim, and attach copies of Plaintiff's EEOC Charges. (Doc. Nos. 5-1 & 10-2).[3] Defendants' Motions have been fully briefed and are ripe for disposition.

## II. STANDARD OF REVIEW

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Lab'ys, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). The plaintiffs' "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint attacked by

---

[3] In its review of a Rule 12(b)(6) motion to dismiss, this Court "may consider documents attached to the complaint . . . as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic" without converting the motion into a motion for summary judgment. Sec'y of State for Defense v. Trimble Nav. Ltd., 484 F.3d 700, 705 (4th Cir. 2007). The EEOC Charges are integral to the Complaint and authentic. Id.

a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard. Id. at 678-79. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Id. at 679; see also Anand v. Ocwen Loan Serv., LLC, 754 F.3d 195, 198 (4th Cir. 2014) (recognizing the court does not accept as true legal conclusions couched as a factual allegations). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). Although the pleading requirements stated in Rule 8 of the Federal Rules of Civil Procedure mark "a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678-79.

Second, to the extent there are well-pleaded factual allegations, the court assumes their truth and then determines whether they plausibly give rise to an entitlement to relief. Id. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'– 'that the pleader is entitled to relief,'" and therefore should be dismissed. Id. (quoting Fed. R. Civ. P. 8(a)(2)).

The sufficiency of the factual allegations aside, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." Neitzke v. Williams, 490 U.S. 319, 326 (1989). Indeed, where "it is clear that no relief could be granted under any set of facts that could be prove[n] consistent with the allegations . . . a claim must be dismissed." Id. at 327 (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)).

### III. DISCUSSION

**A. Plaintiff's Title VII Hostile Work Environment Claims Against Google and Allied Universal are Barred for Failure to Exhaust Administrative Remedies**

Plaintiff's first and fifth causes of action assert hostile work environment claims under Title VII. Defendants argue Plaintiff failed to exhaust his administrative remedies with respect to these claims. The undersigned agrees and recommends dismissal of these claims.

The Court will treat Defendants' arguments regarding Plaintiff's purported failure to exhaust administrative remedies as raised under Rule 12(b)(6). See Fort Bend Cnty., Tex. v. Davis, 139 S. Ct. 1843, 1850 (2019); Cunningham v. Wells Fargo N.A., No. 3:19-CV-00528-FDW, 2020 WL 5300843, at *5-6 (W.D.N.C. Sept. 4, 2020) (explaining "the Supreme Court has 'held that Title VII's charge-filing requirement is not jurisdictional, but rather a claims-processing rule'" and as such "are analyzed under Rule 12(b)(6) rather than 12(b)(1)" (quoting EEOC v. 1618 Concepts, Inc., 432 F. Supp. 3d 595, 601 (M.D.N.C 2020))); Hodge v. Walrus Oyster Ale House, No. CV TDC-18-3845, 2019 WL 6069114, at *3 (D. Md. Nov. 15, 2019).

"It is well settled that before filing suit under Title VII . . . a plaintiff must exhaust [his] administrative remedies by bringing a charge with the EEOC." Walton v. Harker, 33 F.4th 165, 172 (4th Cir. 2022); Harris v. Am. Airlines, Inc., No. 3:17-CV-00280-GCM, 2017 WL 2880400, at *1 (W.D.N.C. July 6, 2017). Title VII directs that a "charge . . . shall be filed" with the EEOC "by or on behalf of a person claiming to be aggrieved" within 180 days "after the alleged unlawful

employment practice occur[s]." Fort Bend Cnty., 139 S. Ct. at 1846 (citing 42 U.S.C. § 2000e–5(b), (e)(1)). Whether or not the EEOC acts on the charge, a claimant receives a right-to-sue notice, and thereafter, a civil action can be brought within 90 days following such notice. Id. at 1847 (citing 42 U.S.C. § 2000e–5(f)(1)); Harris, 2017 WL 2880400, at *1. If the alleged unlawful employment practice is not reported to the EEOC within that timeframe, the claim will be barred. Walton, 33 F.4th at 174-75. Courts regularly dismiss Title VII claims when a plaintiff fails to exhaust administrative remedies before filing suit. Id.; Odom v. Brookfield Renewable, No. 1:20-CV-00101-MR-WCM, 2021 WL 1015857, at *4 (W.D.N.C. Feb. 11, 2021), Mem. & R. adopted, 2021 WL 982329 (W.D.N.C. Mar. 16, 2021) (dismissing Plaintiff's claims).

When a plaintiff brings a charge with the EEOC, that charge must be "sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b). This requirement provides the employer notice of its employee's claims and an opportunity to resolve those claims out of court, if possible. Miles v. Dell, Inc., 429 F.3d 480, 492 (4th Cir. 2005); Clark v. Guilford Cnty., N.C., 2017 U.S. Dist. LEXIS 162024, *9-10 (M.D.N.C. September 30, 2017) (finding a failure to exhaust administrative remedies regarding a national origin-based claim where plaintiff checked the boxes for race/retaliation on her EEOC Charge, but not national origin). In a subsequent suit, a plaintiff may only advance those claims which are "reasonably related to [the] EEOC charge and can be expected to follow from a reasonable administrative investigation." Smith v. First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir. 2000) (citing Chisholm v. United States Postal Serv., 665 F.2d 482, 491 (4th Cir. 1981)). In other words, plaintiffs cannot allege one type of discrimination in an EEOC charge, but later assert other types of discrimination in formal litigation. Id.; see also Chacko v. Patuxent Inst., 429 F.3d 505, 509 (4th Cir. 2005).

In his EEOC Charges, Plaintiff asserted religious discrimination based on Defendants' failure to accommodate his religious accommodation/exemption requests with respect to Google's COVID-19 vaccination mandate. (Doc. No. 5-1 at 1-2; Doc. No. 10-2). Meanwhile, in his Complaint before this Court, Plaintiff's first and fifth causes of action arise under theories of hostile work environment. (Doc. No. 1-1 ¶¶ 42-55, 97-107). Those hostile work environment claims were not raised in his EEOC Charges. Id. As a result, Plaintiff has not exhausted his administrative remedies as to his first and fifth causes action – the Title VII hostile work environment claims – and those claims are barred. See Miles, 429 F.3d at 492; Clark, 2017 U.S. Dist. LEXIS 162024 at *9-10.

Accordingly, the undersigned respectfully recommends that Defendants' Motions to Dismiss be granted as to Plaintiff's first and fifth causes action, his Title VII hostile work environment claims.

**B. NCEEPA Claims for Religious Discrimination Against North Carolina Public Policy Against Google**

Next, Plaintiff's second and third causes of action assert NCEEPA claims against only Google, for religious discrimination resulting in disparate treatment and wrongful termination.

"North Carolina generally adheres to the employment at-will doctrine, meaning that an employee without a definite term of employment may be discharged for any reason and has no claim for wrongful discharge against his employer." Carter v. Sizzling Platter, LLC, No. 3:23-CV-117-GCM, 2023 WL 4604589, at *2 (W.D.N.C. July 18, 2023) (quoting Baucom v. Cabarrus Eye Ctr., P.A., No. 1:06CV00209, 2007 WL 1074663, at *6 (M.D.N.C. Apr. 4, 2007)). The employment-at-will doctrine, however, is subject to an exception that permits claims where "the employee's dismissal occurred for a reason that violates public policy." Head v. Adams Farm Living, Inc., 775 S.E.2d 904, 909 (N.C. Ct. App. 2015) (quoting Brackett v. SGL Carbon Corp.,

580 S.E.2d 757, 761-62 (2003)). Reasons that violate public policy include discrimination by the employer "on account of race, religion, color, national origin, age, sex or handicap." N.C. Gen. Stat. § 143-422.2(a).

In evaluating NCEEPA claims, courts apply Title VII framework and principles "insofar as they do not conflict with North Carolina statutes and case law." Hughes, 48 F.3d at 1383. "A plaintiff can assert Title VII religious discrimination claims under two separate theories—disparate treatment or failure to accommodate." Redmon v. Flexsol Packaging Corp., No. 5:19-CV-00124-KDB-DSC, 2021 WL 1109361, at *9 (W.D.N.C. Mar. 23, 2021). Plaintiff pleads both theories and the undersigned will address each below.

1. Disparate Treatment Resulting in Wrongful Discharge Against Public Policy

Plaintiff brings his second cause of action against Google alleging religious discrimination under a theory of disparate treatment resulting in wrongful discharge against public policy in violation of NCEEPA. Plaintiff's Complaint sufficiently pleads this claim for relief.

To state a claim of disparate treatment under N.C. Gen. Stat. § 143-422.2, Plaintiff must sufficiently plead that: (1) he is a member of a protected class; (2) he was qualified for his job and his job performance was satisfactory; (3) he was fired; and (4) other employees who are not members of the protected class were retained under apparently similar circumstances. Hughes, 48 F.3d at 1383 (citing N.C. Dep't of Corr. v. Gibson, 301 S.E.2d 78, 82-83 (1983)); Head, 775 S.E.2d at 910-11 (citing Johnson v. Crossroads Foard, Inc., 749 S.E.2d 102, 108 (N.C. Ct. App. 2013)).

Plaintiff's Complaint sufficiently pleads each of these elements. He alleges that he is a Christian, and as a Christian, Plaintiff is a member of a protected class. Redmon, 2021 WL 1109361, at *9 ("Redmon has established that he is in a protected class because of his beliefs as a Baptist"); Head, 775 S.E.2d at 555 (concluding as a Seventh-Day Adventist the plaintiff was a

member of a protected class); Abeles v. Metro. Wash. Airports Auth., 676 Fed. App'x 170, 174-75 (4th Cir. 2017) ("As an individual alleging discrimination on the basis of her faith, Plaintiff is a member of a protected class."). Plaintiff alleges that he was qualified for his position as a Security Guard at Google's datacenter and was satisfactorily performing his job duties at the time of his termination. (Doc. No. 1-1 ¶ 62). Plaintiff had been working at the Google datacenter for over ten years. Id. ¶¶ 20-24. Plaintiff then alleges that he did not receive certain bonuses and other work benefits because he refused the COVID-19 vaccination, was treated differently from those others who received starred badges, and was ultimately terminated on December 2, 2021, for his refusal. Id. ¶¶ 35, 51, 63-64. Plaintiff alleges that other contract employees, upon information and belief, who were not Christians were allowed to keep the positions at the Google datacenter despite not receiving the COVID-19 vaccination. Id. ¶ 65. Further, before Plaintiff was fired, Google allegedly stated that it would not approve any accommodation requests for security personnel at its datacenter. Id. ¶ 34. But, Plaintiff pleads, upon information and belief, that Defendants posted a job advertisement for a security guard position that stated it would permit medical or religious accommodations for vaccines. Id. ¶ 36. In short, the thrust of Plaintiff's claim alleges that he is in a protected class as a Christian, was qualified and satisfactorily performing his job, but was treated differently than other non-Christians when he was terminated for not receiving the COVID-19 vaccination while other non-Christians kept their jobs despite not receiving the COVID-19 vaccination. Considering this, at this early motion to dismiss stage, Plaintiff has sufficiently alleged a claim.

Google cites to Redmon for its argument that Plaintiff failed to state a claim. Redmon, 2021 WL 1109361, at *9. However, the opinion to which Google cites for this argument was decided at the summary judgment stage, not the motion to dismiss stage. Indeed, in Redmon, the

religious discrimination claims survived the motion to dismiss stage.  See Redmon v. Flexsol Packaging Corp., No. 5:19-CV-00124-KDB-DSC, 2020 WL 967619 (W.D.N.C. Feb. 27, 2020), Mem. & R. adopted, 2020 WL 1244240 (W.D.N.C. Mar. 13, 2020).[4]  It was at the summary judgment stage that the court found plaintiff failed to provide any evidence that other employees who had different religious beliefs were treated better.  Redmon, 2021 WL 1109361, at *9.  Like Redmon, the undersigned finds Plaintiff has sufficiently stated a claim that survives the Rule 12(b)(6) standard.  This case has not yet had the benefit of discovery and this Court cannot forecast how the evidence will weigh at a summary judgment stage using a different standard.

For these reasons, the undersigned respectfully recommends that Google's Motion to Dismiss Plaintiff's second cause of action be denied.

---

[4] Google argues for the first time in its reply brief that disparate treatment claims are not valid under the NCEEPA.  As an initial matter, Local Rule 7.1 provides that "[a] reply brief should be limited to a discussion of matters newly raised in the response."  LCvR 7.1(e).  Google did not argue disparate treatment claims may not be brought under NCEEPA in its initial brief in support of its motion nor did this argument respond to anything raised in Plaintiff's response, which addressed the sufficiency of the allegations in the Complaint.  For this reason alone, the Court need not consider this new argument in Google's reply brief.  In any event, Google's argument misses the mark.  Caselaw, including a published Fourth Circuit case and North Carolina appellate opinions, demonstrates at least in certain circumstances, including where a plaintiff alleges disparate treatment resulting in wrongful discharge in violation of public policy (as opposed to, for example, a retaliation or constructive discharge claim), such claims may be valid under the NCEEPA.  See, e.g., Hughes v. Bedsole, 48 F.3d 1376, 1383 (4th Cir. 1995) (stating elements of disparate treatment claim under NCEEPA); Head, 775 S.E.2d at 910-11 (stating elements of disparate treatment claim under NCEEPA, specifically in case alleging religious discrimination resulting in termination for failing to get flu vaccination against religion); Johnson v. Crossroads Foard, Inc., 749 S.E.2d 102, 108 (N.C. Ct. App. 2013) (citing to Hughes, 48 F.3d 1376, and stating elements for disparate treatment claim under NCEEPA); Gourley v. Ken Wilson Ford, Inc., No. 1:06CV141, 2007 WL 1686949, at *3 (W.D.N.C. June 11, 2007) (stating elements of disparate treatment claim under N.C. Gen. Stat. § 143–422.2); Redmon, 2021 WL 1109361 (considering at summary judgment stage wrongful discharge based on religious discrimination claim under NCEEPA within Title VII analysis).  Also, to the extent Google argues that Plaintiff failed to exhaust his administrative remedies with respect to his NCEEPA disparate treatment claim (as opposed to his Title VII claims), Google has not provided citations to any statutes or caselaw to support this argument.

2. Reasonable Accommodation

Plaintiff brings his third cause of action against Google alleging religious discrimination under the NCEEPA under a failure to accommodate theory, but this claim fails as a matter of law.

North Carolina courts hold that employers have no duty to reasonably accommodate employees under the NCEEPA. See Head, 775 S.E.2d at 909-10. For example, in Head, the plaintiff alleged that receiving the flu vaccination was against her religious beliefs, she was terminated for not receiving the flu vaccination, and argued that her former employer had a legal duty to reasonably accommodate her religious beliefs because such duty exists under Title VII. Id. at 909. However, relying on an earlier case involving an alleged failure to accommodate a disability under the NCEEPA, the court explained that unlike Title VII, the NCEEPA "does not impose a corresponding duty of reasonable accommodation by an employer." Id. at 909 (citing Simmons v. Chemol Corp., 528 S.E.2d 368, 370 (N.C. App. 2000)) (emphasis in original). The Head court found no distinction in the employer's duty to accommodate a disability versus a religious belief and held that the plaintiff's former employee had no duty to reasonably accommodate her under the NCEEPA, stating there is "no duty of reasonable accommodation exists under N.C. Gen. Stat. § 143–422.2." Id. at 909-10; see also Simmons, 528 S.E.2d at 371-72; Perry v. W. Marine, Inc., 805 S.E.2d 544 (N.C. Ct. App. 2017) (Table) (explaining "our Court has held that no duty exists upon an employer to provide reasonable accommodations under N.C. Gen. Stat. § 143-422.2" and citing to Simmons, 528 S.E.2d 368, to conclude "[e]ven if Plaintiff's complaint is construed to include a claim for failure to reasonably accommodate Plaintiff's disability, the trial court properly dismissed the wrongful termination claim under Rule 12(b)(6)."); Place v. Chowan Univ., No. 2:20-CV-79-FL, 2021 WL 2445816, at *6 n.5 (E.D.N.C. June 15, 2021) ("Moreover, North Carolina courts 'have previously held that N.C. Gen. Stat. § 143-422.2

does not impose a corresponding duty of reasonable accommodation by an employer.'" (quoting Head, 775 S.E.2d at 909)).

Even assuming *arguendo* that such claim does exist under the NCEEPA, the Complaint, as currently pled, does not allege sufficient facts to support a claim. To state a plausible claim that an employer violated its duty to accommodate, at least under Title VII, Plaintiff must allege that: (1) he has a bona fide religious belief that conflicts with a job requirement; (2) he informed his employer of this belief; and (3) he was disciplined for failure to comply with the job requirement. Ellison, 692 F. Supp. 3d at 556 (quoting Chalmers v. Tulon Co. of Richmond, 101 F.3d 1012, 1019 (4th Cir. 1996)); EEOC v. Firestone Fibers & Textiles Co., 515 F.3d 307, 312 (4th Cir. 2008). "[T]o withstand a motion to dismiss, Plaintiff[] [is] obliged to set forth 'sufficient allegations regarding [his] subjective personal beliefs, how those beliefs are related to [his] faith, and how those beliefs form the basis of [his] objection to the COVID-19 vaccination." Menk v. MITRE Corp., --- F.Supp.3d ----, 2024 WL 327087, at *18 (D. Md. Jan. 29, 2024) (quoting Ellison, 692 F. Supp. 3d at 559). Here, the Complaint lacks any specifics, except conclusory references, about Plaintiff's beliefs or how they form the basis of his objection to Google's vaccination policy. (Doc. No. 1-1 ¶¶ 48-51-52, 61, 63-66, 77, 102-104, 119); see Dublin v. UNC Rex Healthcare, No. 5:22-CV-507-BO-RJ, 2024 WL 252062, at *2 (E.D.N.C. Jan. 23, 2024) (concluding plaintiff's complaint failed to plead a Title VII religious accommodation claim where, among other things, plaintiff failed to identify with any specificity her religious beliefs and how they conflicted with a vaccine mandate); Menk, 2024 WL 327087, at *18 (concluding plaintiffs' complaint failed to plead a Title VII failure to accommodate claim where plaintiffs did not allege what subjective religious beliefs they maintain or how those beliefs form the basis of their objection to the vaccine policy).

For these reasons, the undersigned concludes that Plaintiff's third cause of action asserting an NCEEPA claim fails. Accordingly, the undersigned respectfully recommends that Google's Motion to Dismiss Plaintiff's third cause of action be granted.[5]

### C. Title VII Religious Discrimination Resulting in Constructive Discharge Claim Against Allied Universal

Plaintiff's sixth cause of action brings a claim for religious discrimination resulting in constructive discharge under Title VII against Allied Universal only.

"The constructive-discharge doctrine contemplates a situation in which an employer discriminates against an employee to the point such that his 'working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign.'" Green v. Brennan, 578 U.S. 547, 555 (2016) (quoting Pa. State Police v. Suders, 542 U.S. 129, 141 (2004)). In those circumstances, Title VII "treats the resignation as tantamount to an actual discharge." Id. Thus, "[c]onstructive discharge is a legal fiction that serves as a component of a larger claim," but is distinct from the underlying discriminatory act. Sunkins v. Hampton Roads Connector Partners, No. 2:23cv91, 2023 WL 7411761, at *6-7 (E.D. Va. Nov. 9, 2023) (citing Bradley v. U.S. Foods, Inc., 4:14–cv–1772–RBH, 2015 WL 5158731, at *18 (D.S.C.

---

[5] To be sure, courts have recognized cognizable claims under Title VII (as opposed to NCEEPA) for failure to accommodate in similar circumstances, but in those cases the complaint contains more than conclusory allegations about the plaintiff's subjective and sincerely held religious beliefs. See e.g., Ellison, 692 F. Supp. 3d at 559-60 (concluding plaintiff's complaint contained sufficient allegations regarding his subjective personal beliefs, how those beliefs are related to his faith, and how those beliefs form the basis of his objection to the COVID-19 vaccine where he alleged as a Christian he had a "sincerely held religious belief in the sanctity of human life" which did not allow him to take the vaccine.); Stroup v. Coordinating Ctr., No. MJM-23-0094, 2023 WL 6308089, at *1, 5-8 (D. Md. Sept. 28, 2023) (concluding Catholic plaintiff's failure to accommodate claim survived where she alleged she would not receive the COVID-19 vaccine based on her understanding that it was developed using fetal tissues); Camp v. L.A. Arena Company, LLC, No. EDCV22-2220JGB, 2023 WL 4680797, at *2, 7 (C.D. Cal. June 15, 2023) (concluding that the plaintiff's failure to accommodate claim survived where the plaintiff alleged he was a Christian and "believes that his body belongs to God and is a temple of the Holy Spirit" and, "believed that it is against his religion to ingest or inject his body with possible harmful substances"); Keene v. City and Cnty. of San Francisco, No. 22-16567, 2023 WL 3451687, *1 (9th Cir. May 15, 2023) (reversing district court's denial of preliminary injunction where among other things plaintiffs they were Christians who "believe in the sanctity of life" and the record before the district court reflected that COVID-19 vaccine manufacturers used certain cells to which Plaintiff objected).

Sept. 2, 2015)). A constructive discharge requires that: (1) the plaintiff was discriminated against by his employer to the point where a reasonable person in his position would have felt compelled to resign; and (2) plaintiff actually resigned. Id. "An employee is protected from a calculated effort to pressure him into resignation through the imposition of unreasonably harsh conditions, in excess of those faced by his co-workers . . . [but is not] guaranteed a working environment free of stress." Munday v. Waste Mgmt. of N. Am., Inc., 126 F.3d 239, 244 (4th Cir. 1997). "Unless conditions are beyond ordinary discrimination, a complaining employee is expected to remain on the job while seeking redress." Evans v. Int'l Paper Co., 936 F.3d 183, 193 (4th Cir. 2019) (quoting Suders, 542 U.S. atv147) (internal quotation marks omitted).

Intolerability is "not established by showing merely that a reasonable person, confronted with the same choices as the employee, would have viewed resignation as the wisest or best decision, or even that the employee subjectively felt compelled to resign." Id. Instead, intolerability is "assessed by the objective standard of whether a 'reasonable person' in the employee's position would have felt compelled to resign,' . . . that is, whether he would have had no choice but to resign." Id. This requires "something more than the showing required for a hostile work environment claim." Id. "Dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign." Aly v. Yellen, No. 8:23-CV-01699-AAQ, 2024 WL 2053492, at *13 (D. Md. May 8, 2024) (quoting Williams v. Giant Food, Inc., 370 F.3d 423, 434 (4th Cir. 2004)).

Plaintiff's Complaint fails to allege facts sufficient to support his religious discrimination claim resulting in constructive discharge against Allied Universal under any theory. As discussed above in Section B.2., Plaintiff's claim for religious discrimination against either of Defendants based on a failure to accommodate theory fails, as currently pled. Further, Plaintiff's Complaint

does not allege facts to support a disparate treatment claim against Allied Universal (as opposed to Google as discussed above in Section B.1.) because the Complaint lacks specific allegations that Allied Universal treated non-Christian employees different than Plaintiff.

Last, the factual allegations in Plaintiff's Complaint regarding his employment with Allied Universal do not rise to the level of intolerability needed to state a claim for constructive discharge under a hostile environment theory or as an otherwise independent claim. According to Plaintiff's own allegations, after Plaintiff was terminated by Google, Allied Universal accommodated Plaintiff by allowing him to keep his position, albeit on unpaid leave, while Allied Universal found a new position for Plaintiff. (Doc. No. 1-1 ¶ 115). Allied Universal made efforts to find a new position for Plaintiff with other potential job opportunities and contacted Plaintiff about such other job opportunities. Id. ¶ 116. While ultimately Plaintiff did not believe those opportunities were comparable in terms of pay and/or commuting distance, Plaintiff's dissatisfaction with work assignments do not rise to the level of intolerability for purposes of a constructive discharge claim. Aly, 2024 WL 2053492, at *13; Carter v. Ball, 33 F.3d 450, 459 (4th Cir. 1994) ("Demotion can constitute a constructive discharge, especially where the demotion is essentially a career-ending action or a harbinger of dismissal [but] [a] slight decrease in pay coupled with some loss of supervisory responsibilities is insufficient evidence of constructive discharge." (citing Jurgens v. EEOC, 903 F.2d 386, 391-92 (5th Cir.1990) (internal citations and quotations omitted)). The facts as pled simply fail to allege the necessary abusive or intolerable working conditions needed to state a claim for constructive discharge. Nor does Plaintiff cite to any caselaw indicating facts similar to these would support a constructive discharge claim.

For all of these reasons, the undersigned respectfully recommends Allied Universal's Motion to Dismiss Plaintiff's sixth cause of action for constructive discharge be granted. The

allegations, while no doubt difficult and frustrating for Plaintiff after more than a decade of employment, do not state a claim for constructive discharge.[6]

### D. State Law Civil Conspiracy Claim Against Google and Allied Universal

Plaintiff's fourth cause of action alleges a claim for civil conspiracy against both Google and Allied Universal.

"A cause of action for a civil conspiracy under North Carolina law is really an action for damages caused by acts in furtherance of the conspiracy and not for the conspiracy itself." GB Grp., LLC v. Bulldog Nat'l Risk Retention Grp., Inc., No. 5:23-CV-00029-BO, 2023 WL 9514088, at *6 (E.D.N.C. Dec. 27, 2023) (quoting Jackson v. Blue Dolphin Commc'ns of N.C., L.L.C., 226 F. Supp. 2d 785, 791 (W.D.N.C. 2002)). As a result, "the existence of an underlying tortious act is key to establishing a civil conspiracy." Id. (quoting Eli Rsch., Inc. v. United Comm'ns Grp., LLC, 312 F. Supp. 2d 748, 763 (M.D.N.C. 2004)). For a civil conspiracy claim, the plaintiff must show: "(1) an agreement between two or more individuals; (2) to do an unlawful act or to a lawful act in an unlawful way; (3) resulting in injury to plaintiff inflicted by one or more of the conspirators; and (4) pursuant to a common scheme." Id. (quoting Mason v. Health Mgmt. Assocs., LLC, 421 F. Supp. 3d 237, 248 (W.D.N.C. 2019)); Noblee Bottling, LLC v. Gora LLC, No. 3:20-CV-00363-KDB-DCK, 2023 WL 4750124, at *2 n.2 (W.D.N.C. July 25, 2023).

---

[6] The Court observes that while Allied Universal made a failure to exhaust administrative remedies argument as to Plaintiff's hostile work environment claim, it did not make an exhaustion argument as to his constructive discharge claim. Notably, Allied Universal did not argue that claims based on the 2022 events in Plaintiff's constructive discharge claim, which occurred after the December 2021 EEOC Charge, are barred. Thus, the Court did not consider this issue for purposes of considering Allied Universal's Motion to Dismiss. See Walton v. Harker, 33 F.4th 165, 175 (4th Cir. 2022) (stating that Title VII's exhaustion requirement is "a non-jurisdictional 'processing rule, albeit a mandatory one' that must be enforced when properly raised." (quoting Fort Bend Cnty., Tex. v. Davis, 587 U.S. 541, 551 (2019) (emphasis added)); see also United States v. Muhammad, 16 F.4th 126, 129-30 (4th Cir. 2021) (noting that because exhaustion requirement in different statute was "not jurisdictional, it may be waived or forfeited" and concluding that the district court erred by *sua sponte* ruling on administrative exhaustion).

Here, Plaintiff's Complaint alleges that Defendants had an agreement to terminate Plaintiff for refusing to receive the COVID-19 vaccination against his sincere religious belief when he applied for a religious accommodation. (Doc. No. 1-1 ¶¶ 84-96). These allegations rely entirely on Plaintiff's failure to accommodate theory. The Court already concluded that Plaintiff's Complaint failed to state a claim for failure to accommodate under North Carolina law because such duty is not recognized in North Carolina nor does the Complaint allege sufficient facts to support a claim (see Section B.2.). Because an underlying tortious act must exist to establish a civil conspiracy claim, Plaintiff's civil conspiracy claim fails. GB Grp., LLC, 2023 WL 9514088, at *6 (quoting Eli Rsch., Inc., 312 F. Supp. 2d at 763). Accordingly, the undersigned respectfully recommends Defendants' Motions to Dismiss Plaintiff's fourth cause of action for civil conspiracy be granted.

## IV. RECOMMENDATION

For the foregoing reasons, the undersigned respectfully recommends:

1. Defendant Allied Universal Security Services' Motion to Dismiss Plaintiff's Complaint (Doc. No. 10) be **GRANTED**. The undersigned recommends that Plaintiff's fourth, fifth, and sixth causes of action against Allied Universal be **DISMISSED**.

2. The undersigned further respectfully recommends that that Defendant Google LLC's Motion to Dismiss Plaintiff's Complaint (Doc. No. 4) be **GRANTED IN PART** and **DENIED IN PART**, as set forth below:

   a. Google's Motion to Dismiss be **GRANTED** with respect to Plaintiff's first, third, and fourth causes of action. The undersigned recommends that Plaintiff's first, third, and fourth causes of action against Google be **DISMISSED**.

   b. Google's Motion to Dismiss be **DENIED** with respect to second cause of action.

## V. TIME FOR OBJECTIONS

The parties are hereby advised that, pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained in this Memorandum must be filed within fourteen days after service of same. Failure to file objections to this Memorandum with the Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Id. "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)).

The Clerk is directed to mail a copy of this Memorandum and Recommendation to the parties' counsel and to the Honorable Kenneth D. Bell.

**SO RECOMMENDED**.

Signed: August 6, 2024

Susan C. Rodriguez
United States Magistrate Judge